JAMES J. O'BRIEN, Plaintiff, *v.* JOHN HAMILL and Others, Defendants.

Supreme Court, New York County, January 12, 1933.

*Robert Hoffman* [*Emanuel S. Cahn* of counsel], for the plaintiff.

*Roe & Kramer* [*C. P. Kramer* of counsel], for the defendant Hamill.

*Harry Rappaport*, for the defendant William Faro, Inc.

SCHMUCK, J.   To dignify this litigation with serious consideration would be to clothe it with decency, gravity and materiality. With difficulty is calm and impersonal audience given to the testimony.   While no intention or desire exists to extra-judicially defend any party to this issue, yet common justice forbids passive acceptance of unfounded scurrility.   The object of the law is not to champion in partisan fashion, but it is the duty of the courts to zealously guard against injustice.   Particularly will equity repulse any attempt to use its plenary powers to abet any scheme or project for unworthy notoriety or undeserved profit.   Character and public reputation are priceless possessions and are not good hunting ground simply because a person holds public office.   While fair comment and just criticism, especially of the acts and life of a public official, are rights acknowledged and upheld by the law, the comment must be fair and honest to receive the law's protection.   The time-honored

and rigorously-adhered-to tenet of equity that a supplicant must come into court with clean hands has startling application to the matter in hand. Clean hands is a legal euphemism having no particular application to physical cleanliness of any part of the body, but rather refers to the acceptability, cleanliness and decency of the claim put forth. A litigant whose claim is repugnant may be most irresistible in appearance and yet will receive scant consideration. Clean hands, therefore, mean that a claim tainted with deceit and impurity of motive, which if of decent character would perhaps receive approval, will unhesitatingly be ignored. Recently the court has held (236 App. Div. 479), in setting aside an injunction and has given as its reason for refusing relief, that duplicity is a bar to equitable relief. Strikingly applicable is the language there used: " *Certainly the plaintiff has shown no right to relief in a court of equity, the plaintiff having been shown to have been guilty of an act of fraud and deception on its part * * *. We believe both parties are guilty of attempting to deceive the American public.*"

The most superficial examination of " The Strange Case of Mr. Hoover under Two Flags " causes instant anger because of its patent unfairness and untruthfulness. The documents and records, on which the spite with which the book reeks, are patently excerpts garbled and selected, because standing alone they permit inferences never intended. It does not need the sworn testimony of the impecuniosity harassed and miasmatic minded author and his too late regret to prove, that in order to create demand by notoriety in place of merit, no hesitation was felt in soiling " the hands " searching over the dunghill of shameless insincerity. This was known to the plaintiff and not only known to him but insisted upon by him in the furtherance of the scheme to make money at the expense of one whose supreme and exalted position forbids his descending to even notice the slobbering yapping of the jackals of slander. The imperative facts of this trial leave but one impression, and that impression that none of the parties involved is entitled to equity's protection, for the plaintiff as well as the defendants is made hideous by the meanness and ruthlessness of the attack. Unfortunately, this issue does not permit a complete and satisfactory termination of this matter by consigning these books to the depths of oblivion. Until proper action is taken, " The Strange Case of Mr. Hoover under Two Flags " and " Hoover's Millions and How He Made Them " will continue to sadden and outrage decency. In addition to the reasons ascribed by counsel that no relation of master and servant exists between plaintiff and one of the defendants, that no restrictive covenant forbidding that defendant from writing a book is shown and the failure to show any literary property in the book,

the court principally grants the motion to dismiss and awards judgment to the defendants because neither plaintiff nor the defendants are entitled to equity's consideration by reason of their "unclean hands."

As it would be a travesty on common sense to grant the usual sop awarded a successful litigant, no costs will be granted.

Submit findings in accordance with the above.